**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. ANN STAPLETON, <u>et al.</u>, | : | |
| Plaintiffs | : | No. 4:15-cv-2323 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| PENNS VALLEY AREA | : | |
| SCHOOL DISTRICT, | : | |
| Defendant | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendant Penns Valley Area School District's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 17.)  For the reasons that follow, the Court will deny Defendant's motion.

**I.      BACKGROUND[1]**

Plaintiffs, former public school student Benjamin Benfer and his parents Dr. Ann Stapleton and Mr. Mark Benfer, bring this lawsuit pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 <u>et seq.</u>, (the IDEA), and Section 504 of the Rehabilitation Act against Defendant Penns Valley Area School District.  (<u>See</u> Doc. No. 1.)  Plaintiffs seek a court order mandating that Defendant-district reimburse Plaintiffs for Plaintiff-student's college tuition pursuant to what they allege are the terms of Special Education Hearing Officer's 2008 final order awarding compensatory education.  (<u>See</u> Doc. No. 1.)

The dispute underlying this lawsuit involves the Defendant school district's failure to adequately provide a free appropriate public education (FAPE) to Plaintiff-student during the 2005-2006, 2006-2007, and 2007-2008 school years.  (<u>See</u> Doc. No. 1-1 at 27-30) (final order of

---

[1] The facts presented in this section are drawn directly from Plaintiffs' complaint and accompanying attachments, accepted as true for the present motion only.

1

Hearing Officer William Culleton).  In 2007, Plaintiff-parents initiated administrative

proceedings, alleging that the Defendant school district failed to provide for the education needs

of their autistic son.  (Doc. No. 1 ¶ 11.)  A due process hearing convened on September 25, 2007,

and the administrative record closed on January 9, 2008.  (Id. ¶ 12.)

In his final order dated January 26, 2008, Hearing Officer Culleton found that the student

qualified for disability accommodations under the IDEA and that the school district had failed to

accommodate the Plaintiff-student's educational needs.  (See Doc. No. 1-1.)  Hearing Officer

Culleton's order mandated that the school district prepare a new individualized education

program (IEP)[2] for the student and provide 990 hours of compensatory education.[3]  (Id. at 29-

30.)  As to the form of the compensatory education, Hearing Officer Culleton awarded

compensatory education to "further the goals of the Student's current or future IEP."  (Id. at 29-

30 ¶ 8.)  In total, the paragraph concerning acceptable uses of the compensatory education award

provides:

> 8. The compensatory education ordered above shall not be used in place of
> services that are offered in the current IEP or any future IEP.  The form of
> the services shall be decided by the Parent, and may include any
> appropriate developmental, remedial, or enriching instruction that furthers
> the goals of the Student's current or future IEP.  The services may be used
> after school, on weekends, or during the summer, and may be used after

---

[2] An IEP is "a written statement," reviewed annually, "for each child with a disability[.]"  20
U.S.C. § 1414(d).  It is prepared by educators in collaboration with parents and lays out,
generally speaking, a child's limitations, student-specific educational goals, and a plan for
maximizing the student's education.  Id.
[3] "Compensatory education" is a vehicle by which school districts compensate the families of
students whose educational needs have not been adequately met, typically through reimbursing
the family for the costs of securing substitute education services to replace what the school
district failed to provide.  See M.C. on Behalf of J.C. v. Central Regional School Dist., 81 F.3d
389, 395 (3d Cir. 1996); see also School Comm. of Town of Burlington, Mass. v. Dep't of Educ.
of Mass., 471 U.S. 359, 369 (1985) (authorizing awards of compensatory education under the
IDEA's predecessor statute).

> the Student reaches 21 years of age.  The services may be used hourly or
> in blocks of hours.  The costs to the District of providing the awarded
> hours of compensatory education shall not exceed the full cost of the
> services that were denied.  Full costs are the salaries and fringe benefits
> that would have been paid to the actual professionals who should have
> provided the District services and the actual costs for salaries, tuition and
> transportation for any contracted services.  The District has the right to
> challenge the reasonableness of the hourly cost of the services.

(Id. at 29-30 ¶ 8.)  At the time of Hearing Officer Culleton's order, the student was fourteen

years old and enrolled in the ninth grade at a Defendant-district school.  (Id. at 2.)  Neither party

appealed Hearing Officer Culleton's final order, and the present action is brought to enforce –

not overturn – the final decision.

However, after the final order, the parents and the district continued to disagree about the

scope of the compensatory education.  (Doc. No. 1 ¶ 28.)  In the Fall of 2008, Plaintiff-student

withdrew from the Defendant-district and enrolled in an online charter school, eventually

graduating in 2011.  (Id. ¶ 29.)  After graduation, Plaintiff-student attended St. Francis

University for one school year before transferring to Pennsylvania State University at Mont Alto,

where he completed an associate's degree in 2014.  (Id. ¶¶ 30-31.)  At the time of the complaint

in December 2015, Plaintiff-student was enrolled at the university's main campus, where he is

pursuing a bachelor's degree.  (Id. ¶ 32.)

In 2013, Plaintiffs contacted Defendant seeking to use the 2008 compensatory education

award to cover part of the costs of the student's college tuition.  (Id. ¶ 33.)  Rather than refusing

the request outright, Defendant engaged Plaintiffs in several months of communications

requesting more information linking the college tuition costs to the goals of the student's IEP.

(Id. ¶¶ at 34-47); see also (Doc. Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7).  Plaintiffs allege that the

student's college tuition is an acceptable use of the compensatory education award because the

3

online charter school compiled an IEP including "transition goals" relating to post-secondary education.  (Id.); (see also Doc. No. 1-8) (excerpt from the student's online charter school IEP).

The impasse over payment for the Plaintiff-student's college tuition continued, culminating in the filing of Plaintiffs' complaint on December 2, 2015.  (Doc. No. 1.)  In their complaint, Plaintiffs raise two claims, both of which arise under federal statutes.

In Count I, Plaintiffs allege that Defendant's refusal to pay for Plaintiff-student's college tuition constitutes a violation of  the IDEA.  (Id. ¶¶ 49-65.)  Plaintiffs allege that they have sufficiently exhausted their administrative remedies through the hearing officer process, and that "the District's failure to implement the explicit order of the Hearing Officer" constitutes a new violation of the IDEA.  (See id. ¶¶ 63-65.)  In Count II, Plaintiffs argue that in refusing to pay for Plaintiff-student's college tuition, Defendant is retaliating against Plaintiffs for resorting to the administrative process in the first place and for seeking to enforce the award after it was rendered.  (See id. ¶¶ 67-72.)  Plaintiffs allege that these retaliatory acts violate their rights secured by Section 504 of the Rehabilitation Act and its implementing regulations.  (Id. ¶ 76.) Plaintiffs seek declaratory relief, reimbursement for Plaintiff-student's college tuition, attorney's fees, and unspecified compensatory damages for the alleged retaliation.  (Id. at 17-18.)

Defendant filed this motion to dismiss on January 29, 2016.  (Doc. No. 17.)  The motion has been fully briefed and is ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible

right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To survive a motion to dismiss, civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

Defendant argues that the complaint should be dismissed because (1) Plaintiffs have failed to exhaust their administrative remedies with regard to either the IDEA or Rehabilitation Act; (2) Plaintiffs may not use a compensatory education award to fund college expenses; and (3) Plaintiffs' claims fall outside the applicable statutes of limitations. (See Doc. No. 17.)  The Court begins with a brief overview of the statutory framework underpinning Plaintiffs' claims and then addresses each of Defendant's arguments in turn.

a.      **The IDEA**

"The purpose of the IDEA is to 'ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271 (3d Cir. 2014) (quoting 20 U.S.C. § 1400(d)(1)(A)).  The act conditions federal funding for certain state educational programs on compliance with "detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing IEPs."  Id. at 272; see also 20 U.S.C. § 1415.  In addition, states must provide for a "due process" administrative remedy by which parents may seek redress for a school district's failure to accommodate their child.  Batchelor, 759 F.3d at 272.  The redress procedure must allow parents and the school officials to "participate in an impartial due process hearing with respect to 'any matter relating to the identification, evaluation, or education placement of [the] child, or the provision of a free appropriate public education [(FAPE)] to such child."  Id. (quoting 20 U.S.C. § 1415)).  While the procedures are federally mandated, they are designed and implemented by state and local education authorities.  20 U.S.C. § 1415(f)(1)(A).

6

The IDEA requires that states provide a right to appeal to the state educational agency from the decision of a hearing officer for those parties who are "aggrieved" by the decision of a hearing officer.  20 U.S.C. § 1415(g).  In cases where such an appeal was taken, the state education agency's decision is final for administrative purposes; in cases where no appeal was taken, the decision of the hearing officer becomes final for administrative purposes.  Id. §§ 1415(i)(1)(A-B).

In addition, the IDEA may form the basis for a federal or state lawsuit.  Id. § 1415(i)(2).  A typical IDEA federal complaint is in the nature of an appeal from a final state agency determination.  See id. § 1415(g).  In other cases, such as the case at bar, a party may seek to enforce an administrative decision rather than to appeal from it.  (See Doc. No. 1); see also D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 276 (3d Cir. 2014).  However, prior to filing a federal complaint, would-be plaintiffs are required to exhaust their state administrative remedies under the act.  Batchelor, 759 F.3d at 272.

"[T]he policy of requiring exhaustion … is a strong one," grounded in the IDEA's purpose of fostering collaborative educational solutions between families and school districts.  Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  To properly exhaust, plaintiffs must "complete the administrative process," usually by reaching the final state administrative appeal level.  See id.  The United States Court of Appeals for the Third Circuit has recognized exceptions to the rule requiring exhaustion in situations where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely legal; (3) the administrative officer lacks the authority to render the requested relief; and where (4) "serious

7

and irreversible mental or physical damage" will result unless a judicial decree issues prior to the

conclusion of administrative proceedings.  Id. at 778-79.

Where a party is victorious at the administrative hearing level, the Third Circuit has held

that the futility exception applies because a "favorable decision" leaves a party "with nothing to

appeal," thereby satisfying the administrative exhaustion requirement.  D.E., 765 F.3d at 276.

**b.      The Rehabilitation Act**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual

with a disability in the United States … shall, solely by reason of his or her disability, be

excluded from" a federally funded program.  29 U.S.C. § 794.  Section 504 also provides a

private cause of action against those who retaliate against qualified individuals for asserting

rights secured by the IDEA.  See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 266-67

(3d Cir. 2007); see also 34 C.F.R. § 100.7(e).  In retaliation cases, plaintiffs must ultimately

establish: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action

was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3)

that there was a causal connection between the protected activity and the retaliatory action."

Lauren W., 480 F.3d at 267.

In addition, it is now clear that Rehabilitation Act retaliation claims concerning rights

secured by the IDEA are subject to the same administrative exhaustion requirement as claims

arising under the IDEA itself.  Batchelor, 759 F.3d at 275; see also 20 U.S.C. § 1415(l)

("Nothing in this chapter shall be construed to restrict or limit the rights … available under …

the Rehabilitation Act … except that before the filing of a civil action under such laws … [the

IDEA's administrative procedures] shall be exhausted to the same extent as would be required

had the action been brought under [the IDEA].").

     **c.**     **Defendant's arguments**

     In its motion to dismiss, Defendant argues that Plaintiffs' complaint should be dismissed

because: (1) Plaintiffs have failed to exhaust their administrative remedies; (2) compensatory

education may not be used to defray college tuition costs; and (3) the statute of limitations bars

Plaintiffs' claims.  (See Doc. No. 17.)

     **1.**     **Exhaustion of administrative remedies**

     Defendant argues in the motion to dismiss that Plaintiffs' complaint should be dismissed

because Plaintiffs have failed to exhaust their administrative remedies on their IDEA claim, and

by extension, their Rehabilitation Act claim.  (Doc. No. 18 at 10-17.)  In opposition, Plaintiffs

argue that because they prevailed in Hearing Officer Culleton's final order, they have exhausted

their administrative remedies to the extent required under D.E. v. Central Dauphin School

District, and that this exhaustion is valid as to both the IDEA claim and Rehabilitation Act claim.

(Doc. No. 21 at 3-7.)  The Court agrees with Plaintiffs and will deny Defendants' motion as to

exhaustion.

     The Court first observes that, following Batchelor, Plaintiffs' Rehabilitation Act claim

needs to be exhausted to the same extent as their IDEA claim and not more.  See Batchelor, 759

F.3d at 275.  In addition, the Court observes that the Third Circuit panel opinion from D.E.

controls the outcome in this case.  As the D.E. panel held,

> D.E. received a favorable decision at the administrative level, and neither
> party sought an appeal thereafter, rendering the hearing officer's decision
> final and binding under the IDEA.  For D.E., the favorable decision left

> him with nothing to appeal.  He had, therefore, exhausted his remedies as
> far as the administrative process was concerned.

D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 276 (3d Cir. 2014) (quotations omitted).

Defendant's argument appears to be squarely foreclosed by the Third Circuit's holding.

However, Defendant argues that the present case is factually distinguishable from D.E. (Doc. No. 18 at 13 n.4.)  In particular, Defendant argues that the Pennsylvania Department of Education possesses "general supervisory responsibility" over implementation of Hearing Officer decisions following due process hearings.  (Id. at 13.)  The state agency procedure requires a district to certify compliance with a final order and provides for investigations in the event of non-compliance.  (See id.)  According to Defendants, the state procedures provide an administrative avenue through which Plaintiffs could have sought relief, so Plaintiffs are required to utilize those procedures before filing suit in state or federal court.  (Id. at 13-14.)

In opposition, Plaintiffs argue that they have sufficiently exhausted their remedies under D.E., and that Defendant's reliance on additional state remedies is misplaced.  (Doc. No. 21 at 3-6.)  In particular, Plaintiffs convincingly rely upon Porter v. Board of Trustees of Manhattan Beach Unified School District, 307 F.3d 1064 (9th Cir. 2002), for the proposition that the IDEA does not require them to return to the state administrative proceedings to have Hearing Officer Culleton's order enforced before filing a civil suit.  (Id. at 4-5.)

In Porter, an IDEA opinion cited by the Third Circuit in D.E., the Ninth Circuit reversed a district court's finding that the plaintiffs were required to return to state administrative procedures to enforce a hearing officer's final order when a dispute over implementation of the order arose.  307 F.3d at 1070-75.  The Ninth Circuit panel reasoned that the California administrative procedures for enforcing the award stemmed from federal Department of

Education regulations separate and apart from the IDEA, and that the IDEA itself does not mandate exhaustion beyond securing a final decision in the first instance.  Id.  Similarly, the relevant Department of Education regulations do not "state that a parent must exhaust the [administrative enforcement procedure] to enforce a due process decision in court."  Id. at 1067; see also 34 C.F.R. §§ 300.600 et seq.  In addition to the Third Circuit D.E. panel's reliance on Porter, the Porter decision is consistent with an earlier Third Circuit opinion in Jeremy H. by Hunter v. Mount Lebanon School District, 95 F.3d 272 (3d Cir. 1996).  See Porter, 307 F.3d at 1070-75.  In Jeremy H., the panel described similar state administrative enforcement proceedings – distinct from the IDEA-mandated procedure to obtain a final order – as "elective, [and] not mandatory."  95 F.3d at 283.

Neither party has connected Pennsylvania's administrative enforcement proceedings with the Department of Education regulations that gave rise to the California state enforcement procedures at issue in Porter.  (See Doc. Nos. 18, 21.)  Nevertheless, regardless of the motivation for the Pennsylvania state enforcement procedure, the Court is satisfied that the Pennsylvania administrative enforcement procedures relied upon by Defendant are analogous to those California procedures that the D.E. court described as "distinct from the IDEA's due process requirements" D.E., 765 F.3d at 275, because they are not mandated in the IDEA itself.  As the Porter panel stated, "Congress did not intend to allow states to add additional exhaustion requirements not identified in the [IDEA]."  307 F.3d at 1071.

Consequently, while Pennsylvania's state enforcement procedures were not explicitly considered in the D.E. opinion, the Court is confident that the D.E. decision, together with Porter and Jeremy H., support Plaintiffs' position that they need not return to Pennsylvania procedures

11

to enforce Hearing Officer Culleton's final award prior to initiating suit in this Court. Accordingly, the Court will deny Defendant's motion as to administrative exhaustion for both the IDEA claim and the Rehabilitation Act claim.

### 2.   Compensatory education for college tuition

Defendant next argues that as a matter of law, compensatory education may not be used to pay a student's college tuition.  (Doc. No. 18 at 17-20.)  Defendant argues that the aim of compensatory education is to make a student whole with regard to the services a school district should have been providing.  (Id.)  It follows, Defendant argues, that because a school district is never obligated to provide post-secondary education in the first instance, it cannot be required to do so in an award of compensatory education.  (See id.)  In support of its position, Defendant points to persuasive judicial authority, Department of Education regulations and guidance letters, and to Hearing Officer Culleton's final award in an entirely separate case: In re: J.F., No. 14281-13-14-AS (Jan. 17, 2014), an unrelated case.  (See id. at 17-19.)

In opposition, Plaintiffs argue that hearing officers have great discretion to render compensatory education, even compensatory education to cover college expenses.  (See Doc. No. 21 at 7-8.)  Plaintiffs argue that Defendant allowed students to dual enroll in college programs while still attending high school, and that Defendant's failure to provide for Plaintiff-student's education resulted in the loss of that educational opportunity, so paying for Plaintiff-student's college with the compensatory education award could be viewed as "making him whole."[4]  (Id. at 8-9.)

---

[4] Plaintiffs have also argued that Defendant waived this objection by failing to raise it in the administrative proceedings.  (Doc. No. 18 at 8-9.)  In light of its holding on other grounds, the Court does not reach this argument.

"Compensatory education 'aims to place disabled children in the same position they would have occupied but for the school district's violations of IDEA,' by providing the educational services children should have received in the first instance." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015) (quoting Reid v. District of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005)).  The remedy, a judicial creation not defined in the statute, reflects the broad discretion of hearing officers and courts to grant relief "'appropriate in light of the purpose'" of the IDEA.  Bucks Cnty. Dept. of Mental Health/Mental Retardation v. Penn., 379 F.3 61, 67 (3d Cir. 2004) (quoting School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985)).

Defendant has asked this Court to recognize or declare a rule prohibiting the use of compensatory education awards to fund post-secondary education.  Even within the authorities Defendant proffers in support of its position, the Court cannot find such a broad mandatory proscription.  For example, in T.W. v. Hanover County Public Schools, 900 F. Supp. 2d 659 (E.D. Va. 2012), a case Defendant invokes, a district court dismissed an "impenetrable" pro se IDEA complaint because "[a]s far as the Court [could] decipher," no administrative exhaustion had occurred and the plaintiff sought damages against the school district and a private college. 900 F. Supp. 2d at 662-67.  As part of the analysis, the Court remarked that "the IDEA requires states receiving federal education funding to provide disabled children with free access to public education through high school only." Id. at 665 (emphasis omitted).  However, the T.W. court was not interpreting or enforcing an award of compensatory education.

Defendant finds better support in the Department of Education advisory letters and regulations identified in support of the motion to dismiss. The agency's opinion letter to Dr.

13

Gordon Riffel squarely addresses whether a district may be required to provide compensatory education through providing education at the post-secondary level.  U.S. Dep't of Educ., Office of Special Educ. and Rehab. Serv's., Opinion Letter to Dr. Gordon Riffel (Aug. 22, 2000).  In the words of the agency,

> [The IDEA] does not authorize a school district to provide a student with compensatory education, through the provision of instruction or services, at the postsecondary level.  See [Previous version of 34 C.F.R. § 300.36.] If a student is awarded compensatory education to cure the denial of FAPE during the period when the student was entitled to FAPE, the compensatory education must be the type of educational and related services that are part of elementary and secondary school education offered by the State.

Id.  However, the letter also recognizes "the independence of the right to compensatory education as an equitable remedy to address the denial of FAPE from the right to FAPE generally," and acknowledges that in the agency's view, neither the IDEA nor implementing regulations "require[] or authorize[] a school district to provide a student with compensatory services at the junior-college level, <u>unless such services also would be considered elementary and secondary school education</u>" under state law.  Id. (emphasis added).  Even if one reads the letter to announce a rule against compensatory education funding for post-secondary expenses – and the Court does not – the letter posits an exception to that rule.  Consequently, despite the non-binding opinion letter's particular recommendation, the letter ultimately stands for the proposition that no rule absolutely prohibits the use of compensatory education for post-secondary expenses.

Similarly, Defendant has overstated the holding in <u>J.F.</u>, an IDEA due process final order from 2014 that is unrelated to Plaintiff-student's case except that both cases were adjudicated by Hearing Officer Culleton.  In the <u>J.F.</u> order, Hearing Officer Culleton addressed the <u>J.F.</u> parent's

14

argument that the school district should fund for-credit college courses for the child, who was in high school during the relevant time.  (Doc. No. 18-4 at 15-17.)  Hearing Officer Culleton remarked that school districts are not required to provide post-secondary education in the first instance, and concluded that "the District's limitation of compensatory education – to non-matriculating college courses – [was] appropriate in this matter."  (Id. at 16.)  Indeed, the school district in J.F. indicated a willingness to fund college-level courses through the compensatory education award so long as the courses were not used for high school credit.  (See id.)

Presently, the Court's function is limited to adjudicating Defendant's motion.  In the motion, Defendant has asked the Court to announce or recognize a rule prohibiting the use of compensatory education awards for post-secondary expenses.  (See Doc. No. 18 at 26.)  Defendant has not asked the Court to interpret the hearing officer's final award in Plaintiffs' particular case to determine whether Plaintiff-student is entitled to the specific reimbursements that he seeks.  (See id.)  Plaintiffs argue, and the Court agrees, that Plaintiffs' entitlement to any reimbursement under the final order is a necessarily fact-intensive inquiry not susceptible to disposition on a motion to dismiss.  (See Doc. No. 21 at 9.)

While the Court is cognizant that an award of compensatory education is meant to remedy the denial of required educational services, and that a post-secondary education is generally not part of those required educational services, the Court declines to find that no circumstance could arise where an appropriate use of a compensatory education award could entail some form of post-secondary or college-level expense.  In so ruling, the Court considers the discretionary and versatile nature of compensatory education as a remedy, see G.L., 602 F.3d at 608, and the Court observes that in many cases, a deprivation and post hoc relief for that

deprivation may not be perfectly symmetrical.  At present, the Court makes <u>no</u> <u>finding</u> as to whether Plaintiffs are entitled to the particular reimbursements that they seek.

      Accordingly, the Court will deny Defendant's motion to dismiss based on the acceptable uses of a compensatory education award.

### 3.      Statute of limitations

      Finally, Defendant argues that Plaintiffs' claims are barred by the statute of limitations. (Doc. No. 18 at 20-25.)  According to Defendant, Plaintiffs' claims accrued "as far back as early 2013," and a two-year statute of limitations governs IDEA actions following <u>G.L. v. Ligonier Valley School District Authority</u>, 802 F.3d 601 (3d Cir. 2015).  (<u>Id.</u>)  Defendant argues that the "statute of limitation began to run when Plaintiffs[] knew or should have known that the District would not release the compensatory education funds."  (Doc. No. 22 at 15.)  In opposition, Plaintiffs argue that their claims did not accrue until discussions regarding the reimbursement broke down in December 2014 and that a four-year statute of limitations applies.  (Doc. No. 21 at 9-15.)

      The Court will deny Defendant's motion to dismiss as to the statute of limitations. Plaintiffs attached a number of letters to their complaint from district officials repeatedly requesting more information from Plaintiffs about the nature of the reimbursement sought and the connection to Plaintiff-student's IEP.  (Doc. Nos. 1-2, 1-3, 1-5, 1-7); (<u>see</u> <u>e.g.</u>, Doc. No. 1-5 at 3 (District Superintendent: "As I have said before, can you help me to understand how and in what manner any of the referenced services . . . relate to the post-secondary expenses that you have asked the District to pay?")).  According to the complaint, the parties continued to

correspond in an effort to reach an agreement about the scope of compensatory education well into 2014.  (Doc. No. 1 ¶ 48.)  Plaintiffs filed their complaint on December 2, 2015.  (See id.)

As a result, the Court finds that fact issues preclude the disposition of Defendant's statute of limitations argument.  Even if the Court accepts Defendant's position that a two-year statute of limitations applies, it is not clear given the attachments to the complaint and allegations in the complaint that Plaintiffs' claims accrued more than two years before the filing of their complaint.

Accordingly, the Court will deny Defendant's motion to dismiss based on the affirmative statute of limitations defense without prejudice to raising the argument again on a more developed record.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's motion to dismiss the complaint.  An order consistent with this memorandum follows.