IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ANN STAPLETON, et al., | : | |
| Plaintiffs | : | No. 4:15-cv-2323 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| PENNS VALLEY AREA SCHOOL DISTRICT, | : | |
| Defendant | : | |

## MEMORANDUM

This matter is before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiffs Dr. Ann Stapleton, Mark Benfer, and Benjamin Benfer (Doc. No. 47), and Defendant Penns Valley Area School District (the "School District") (Doc. No. 44). At the request of the School District, the Court entertained oral argument on the fully-briefed cross-motions for summary judgment on October 2, 2017. (Doc. No. 59.) Upon detailed consideration of the memoranda filed in connection with the parties' cross-motions for summary judgment (Doc. Nos. 45, 46, 48, 49, 52, 53, 54, 56, 57), the stipulations of fact entered into by the parties (Doc. No. 39), and the arguments presented during oral argument, for the reasons provided herein, the Court will grant the School District's motion for summary judgment (Doc. No. 44), deny Plaintiffs' motion for summary judgment (Doc. No. 47), enter judgment in favor of the School District, and close this case.

## I. BACKGROUND[1]

---

[1] Local Rule 56.1 stipulates that a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 must be accompanied by a "separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1. A party opposing the motion for summary judgment must respond in like manner to the statement of material facts by identifying the genuine issues to be tried. The following relevant

1

The above-captioned action was initiated on December 2, 2012, through the filing of a two-count complaint in this matter by Plaintiffs Benjamin Benfer, a former Penns Valley Area School District student ("Student"), and his parents Dr. Ann Stapleton and Mr. Mark Benfer ("Parents"), against the School District, asserting violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 et seq., (the "IDEA"), and Section 504 of the Rehabilitation Act and its implementing regulations. (See Doc. No. 1). Through this lawsuit, Plaintiffs challenge the alleged failure of the School District to comply with the terms of a favorable administrative decision issued on January 28, 2008, awarding the Student 990 hours of compensatory education upon finding that the School District deprived the Student of a free, appropriate public education ("FAPE"), for the 2005-2006, 2006-2007, and 2007-2008 school years.

The facts of record relevant to the instant dispute are presented as follows. The Student attended a public school in the School District from Kindergarten to Tenth Grade. (Doc. No. 39 at 3 ¶ 12.) In 2001, the Parents obtained an evaluation from a psychiatrist diagnosing the Student with Asperger's Disorder, which later qualified him to receive certain special education services related to that documented disability. (Id. ¶ 19; Doc. No. 39-3 at 4.) Over the course of the Student's enrollment at the School District, several individualized education programs ("IEP"), were implemented to address identified learning deficits exhibited by the Student in the areas of

---

facts of record are extracted from the parties' statements of material facts as well as the stipulated statement of facts submitted by the parties on January 30, 2017. (Doc. No. 39.)

reading comprehension and written and oral expression.[2] (Doc. No. 39 at 4 ¶21.) However, the Parents were dissatisfied by the measures taken by the School District to account for the Student's learning disabilities. In May of 2007, the School District denied the Parents' requests for tuition reimbursement for extended school year services and for an independent educational evaluation for the Student to be conducted at the School District's expense. (See Doc. No. 39-3.) Ultimately, both the Plaintiffs and the School District filed due process complaints with the Pennsylvania Office for Dispute Resolution. (Doc. No. 39 at 4 ¶ 22.)

A due process hearing before Hearing Officer William Culleton, Jr. (the "Hearing Officer"), convened on September 25, 2007, and the administrative record closed on January 9, 2008. (Doc. No. 39-3.) On January 26, 2008, following six days of proceedings, the Hearing Officer issued a decision in which he found that the School District failed to administer educational services reasonably calculated to provide the Student a meaningful educational benefit. (Id.) Significantly, the Hearing Officer mandated that the School District prepare a new IEP for the Student and directed that the School District provide the Student 990 hours of compensatory education. (Id. at 29-30.) As to the form of the compensatory education, the Order provided as follows:

> 8. The compensatory education ordered above shall not be used in place of services that are offered in the current IEP or any future IEP. The form of the services shall be decided by the Parent, and may include any appropriate developmental, remedial, or enriching instruction that furthers the goals of the Student's current or future IEP. The services may be used after school, on weekends, or during the summer, and may be used after

---

[2] An IEP is "a written statement," reviewed annually, "for each child with a disability[.]" 20 U.S.C. § 1414(d). It is prepared by educators in collaboration with parents and lays out, generally speaking, a child's limitations, student-specific educational goals, and a plan for maximizing the student's education. Id.

3

the Student reaches 21 years of age. The services may be used hourly or in blocks of hours. The costs to the District of providing the awarded hours of compensatory education shall not exceed the full cost of the services that were denied. Full costs are the salaries and fringe benefits that would have been paid to the actual professionals who should have provided the District services and the actual costs for salaries, tuition and transportation for any contracted services. The District has the right to challenge the reasonableness of the hourly cost of the services.

(Id. ¶ 8.) Neither party appealed the Hearing Officer's final Order.

In the ensuing months following the January 26, 2008 decision, the Parents and the School District disagreed as to what specially designed instruction and related special education services the School District would be required to provide to the Student in order to comply with the Hearing Officer's directives.[3] In a February 24, 2008 letter addressed to the School District, counsel on behalf of Plaintiffs requested that the School District convert the 990 hours of compensatory education awarded the Student into a fund totaling $75,000.00, at an hourly rate of $75.00, to be administered to the Student for "any education purposes even after he turns 21." (Doc. No. 39 at 24 ¶ 43.) The School District repeatedly disputed the reasonableness of Plaintiffs' proposed uniform hourly rate of $75.00, but acknowledged in a response on June 25, 2008 that "[o]n a case-by-case basis, . . . given the particular service for which you may request payment by the [School] [D]istrict, it is quite possible that the hourly rate for the service selected would be reasonable if it were $75.00 per hour, or for that matter a greater or lesser amount." (Id. ¶¶ 74, 75). On June 26, 2008, the Parents wrote to the School District's Superintendent, Brian Griffith, again requesting that the 990 hours of compensatory education at "$75.00/ hour

---

[3] The Parents conferred with the School District's IEP team at scheduled IEP conferences held in February and March of 2008, and participated in monthly meetings with district administrators and teaching personnel, but were ultimately unable to agree on an appropriate IEP for the Student. (Doc. No. 39 at 23 ¶ 40.)

4

be paid to [the Student] by check or that the 990 hours be established in a trust fund to be used for [the Student]." (Id. ¶77.) On July 1, 2008, the Superintendent replied to the Parents' June 26, 2008 letter, informing them that the School District did "not intend to establish any fund," but would nevertheless "agree to comply with the order to provide services at [the Parents'] discretion within the parameters of the [H]earing [O]fficer['s] directives/order." (Id. ¶ 77.)

Despite this ongoing exchange regarding the implementation of the Hearing Officer's January 26, 2008 Decision, the parties continued an open dialogue about the provision of services available to the Student. (Id. ¶ 79.) As part of that dialogue, the School District set forth available options for the Plaintiffs to consider regarding the Student's upcoming 2008-2009 school year. (Id. ¶ 80.) Among those options was enrollment in a public charter school. Consequently, in the fall of 2008, the Student withdrew from the School District and enrolled in the PA Cyber Charter School.[4] (Id. ¶ 81.) Over the course of the Student's enrollment at the PA Cyber Charter School, several IEPs existed for the Student. (Id. ¶ 96.) The last operative IEP implemented for the Student, dated April 14, 2011, included certain transition goals relating to post-secondary education and employment. (Id. ¶¶ 99-102.)

The Student eventually graduated from the PA Cyber Charter School in 2011. (Id. ¶ 109.) After graduation, the Student attended St. Francis University for one school year before transferring to Penn State University at Mont Alto in the fall of 2012, where he completed an associate's degree in Forest Technology in 2014. (Id. ¶¶ 111-114.) In the fall of 2014, the

---

[4] Notably, in January of 2009, the Parents obtained a tutor to provide the Student with instructional support in reading. The School District did not challenge the invoices submitted by the Parents for disbursement of compensatory education hours, and remitted approximately $11,027.50 for tutoring services rendered from February 2009 to June 2010. (Id. ¶¶ 83-88.)

Student enrolled at Penn State University's main campus to pursue a bachelor's degree in Forestry Ecosystem Management. (Id. ¶ 114.)

No request was made to the School District during this period to dispense compensatory education funds for tutoring or other instructional support until 2013, when the Student contacted the Superintendent seeking to use the compensatory education award to cover part of the costs of his college tuition. (Id. ¶ 112.) Rather than refusing the request outright, the School District engaged Plaintiffs in several months of communications, requesting more information linking the college tuition costs to the goals of the Student's previous IEP. The impasse over payment for the Student's college tuition continued, culminating in the filing of this action. (Doc. No. 1.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Thus, where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Anderson, 477 U.S. at

6

248. Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one. Id.

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has carried this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In deciding a motion for summary judgment, the court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497

7

U.S. 871, 888 (1990). Moreover, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." Id.

The standard applied to a motion for summary judgment "is no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). Indeed, as explained by the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).

Thus, a district court presented with cross-motions for summary judgment is instructed to evaluate the motions separately, "and view the evidence presented for each motion in the light most favorable to the nonmoving party." Borrell v. Bloomsburg Univ., 63 F. Supp. 3d 418, 433 (M.D. Pa. 2014) (citations omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III. DISCUSSION[5]

---

[5] Plaintiffs have posited in their briefing that the School District lacks standing to challenge the use of the compensatory education funds in this enforcement action due to its failure to appeal the Hearing Officer's January 28, 2008 Decision within the statutorily-mandated period. The Court is unmoved by this argument, as the School District could not have had the opportunity to raise the compensatory education issue presented in this case until January of 2013, when Plaintiffs approached the Superintendent with a request that the remaining compensatory education award be used to pay for the Student's college tuition and attendant expenses. (Doc. Nos. 48 at 9, 54 at 13.)

A.  COUNT I: VIOLATION OF THE IDEA

The parties have each moved for summary judgment on Count I of Plaintiffs' complaint, which asserts a violation of the IDEA, 20 U.S.C. §1401 et seq., stemming from the School District's purported failure to properly implement the Hearing Officer's January 26, 2008 Decision awarding the Plaintiffs 990 hours of compensatory education by reimbursing Plaintiffs $84,803.98 for the Student's tuition and expenses while attending St. Francis University and Penn State University. In the Court's view, the question posed by this enforcement action is simply whether the IDEA permits, and the Hearing Officer's Decision contemplates, that the Student receive, as a monetary payout, an unused compensatory education award to satisfy college tuition and attendant post-secondary education expenses.

The IDEA conditions a state's receipt of federal funds on the implementation of statewide special-education programs guaranteeing a FAPE to eligible disabled children. 20 U.S.C. § 1412(a)(1)(A). Under the IDEA, a state receiving federal educational funding must provide a disabled student residing in that state a FAPE until he or she reaches the age of twenty-one. 20 U.S.C. § 1412(2)(b). The FAPE required by the IDEA must be tailored to meet the unique needs of the disabled student through a program of individualized instruction reasonably calculated to confer a meaningful educational benefit. 20 U.S.C. § 1414(d)(1)(A). Under the IDEA, disabled students and their parents are guaranteed certain procedural safeguards to ensure a school district complies with its obligation to provide eligible students with a federally mandated FAPE. "One such procedural safeguard is the right of those aggrieved by violations of the IDEA to a[n impartial] due process hearing before an administrative official," to resolve any "matter relating to the identification, evaluation, [ ] educational placement . . . , or the provision

of a" FAPE to a child.  D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 274 (3d Cir. 2014); 20 U.S.C. § 1415(b)(6) & (f)(1).  A party aggrieved by the findings and decision rendered [by the administrative hearing officer]" as to the provision of a FAPE "may appeal such findings and decision to the [s]tate educational agency."  Id. (quoting 20 U.S.C. § 1415(g)(1)).  Ultimately, upon exhausting the administrative appeals process, the party aggrieved by the administrative decision resulting from the impartial due process hearing may seek judicial review of the unfavorable administrative decision via a civil action filed in a state or federal court of competent jurisdiction.  (Id.)  A prevailing party aggrieved by later noncompliance with the favorable terms of a final state administrative decision, however, may pursue an action in federal court without resort to the administrative exhaustion procedure as a jurisdictional prerequisite.  Id. at 274  ("[I]ndividuals seeking to enforce a favorable decision obtained at the administrative level are 'aggrieved' for purposes of the IDEA and may properly pursue such claims in court.").

The IDEA confers the hearing officer or court broad discretion in crafting an appropriate equitable remedy upon finding that a disabled student was denied a FAPE.  (Id.)  An award of compensatory education is one such form of equitable relief ordered by a court or hearing officer to redress the child's deprivation of his or her right to a FAPE.  B.D. v. District of Columbia, 817 F.3d 792 (D.C. Cir. 2015); Sch. Dist. of Phila. v. Post, No. CV 15-4501, 2017 WL 2879684, at *12 (E.D. Pa. July 5, 2017) ("Compensatory education . . . is one possible remedy available for the deprivation of the right to a FAPE.") (citation omitted).  A judicially-constructed remedy, compensatory education offers prospective education services designed "to place disabled children in the same position they would have occupied but for the school district's violations of [the] IDEA."  G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015)

10

(quoting Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005)). "An award of compensatory education [may extend] the disabled student's entitlement to a free appropriate education beyond age twenty-one to compensate for deprivations of that right before the student turned twenty-one." Carlisle Area Sch. v. Scott P. By & Through Bess P., 62 F.3d 520, 536 (3d Cir. 1995), amended (Oct. 24, 1995) (citing Lester H. v. Gilhool, 916 F.2d 865, 872 (3d Cir. 1990), cert. denied, 499 U.S. 923, 111 (1991)). However, the nature and extent of compensatory education available to a student past the age of entitlement should reflect that which "would have accrued from special education services the school district should have supplied in the first place." Reid ex rel. Reid, 401 F.3d at 524.

In an action to enforce a favorable administrative decision resulting from an impartial due process hearing, as is the case here, the district court is vested with the authority to "formulate an appropriate remedy that would effectuate the purpose of the IDEA and the hearing officer's award." D.E., 765 F.3d at 273. Informed by the IDEA's comprehensive remedial scheme, the purposes served by a compensatory education award, and the unambiguous terms set forth in the Hearing Officer's Decision, the Court finds that the IDEA does not envision, nor did the Hearing Officer's Decision create, an unfettered right to college tuition reimbursement from a prior compensatory education award for educational benefits not provided to the Student. Several notable points borne out by the record and briefing in this matter reinforce the Court's ruling as to the compensatory education award.

As an initial matter, while Plaintiffs rely on the Court's vast discretionary authority under the IDEA to devise an appropriate remedy where equity requires it in support of their argument that it may order reimbursement of college tuition from an unused compensatory education

award, Plaintiffs cite no relevant authority supporting the release of compensatory education funds for the payment of college tuition as an appropriate equitable remedy. Indeed, the Court's independent review of available administrative and judicial decisions in this context has revealed no cases in which a hearing officer ordered a school district to compensate the student for a substantive FAPE deprivation by fronting the full costs of the student's college tuition, let alone any case in which a district court upheld a hearing officer's award of compensatory education in the form of payment of full college tuition, interpreted a hearing officer's order imposing an award of compensatory education as including all post-secondary education costs, or ordered a school district to reimburse the student for all college tuition expenses. But see Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist., 408 F. App'x 411, 414 (2d Cir. 2010) (construing the state hearing officer's award as including five of the nine courses the student took while attending a college exclusively for individuals with learning disabilities as integral to the implementation of a reading program for that student); Sabatini v. Corning-Painted Post Area Sch. Dist., 78 F. Supp. 2d 138, 145 (W.D.N.Y. 1999) (addressing whether "funds may be disbursed under [the] IDEA for college courses where the intent is to apply credit for those courses toward the acquisition of a high school diploma," and cautioning that "concentrat[ing] solely on the type of school at which [the Student] seeks to receive educational services, while ignoring his ultimate goal in doing so, would elevate form over substance") (emphasis omitted). The lack of available case law granting the form of equitable relief requested by Plaintiffs only buttresses this Court's conclusion that the authority derived from the IDEA to fashion equitable relief that fosters the purposes of the IDEA, does not, alone, provide an adequate basis upon which to award college tuition reimbursement.

Quite the contrary, the Court's authority to grant equitable relief to disabled children and their families under the IDEA is subject to the limitation that such relief be appropriate in light of the purpose of the IDEA, which includes ensuring "that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400. As applied to an award of compensatory education, a particular form of equitable relief, such an award must be reasonably tailored to address the education deficit that resulted from the educational agency's failure to provide the student a FAPE. See C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 290 (1st Cir. 2008) ("Compensatory education is a surrogate for the warranted education that a disabled child may have missed during periods when . . . he was effectively denied a FAPE."). It follows then, that even assuming the IDEA authorizes payment of college tuition as a form of compensatory education, the disbursement of those funds under the IDEA for college courses and attendant expenses must align with identified educational services the student did not receive from the school district for the period of time he or she was deprived a FAPE. Plaintiffs have not demonstrated to the Court's satisfaction that the costs associated with the Student's college attendance were, in fact, for educational services the Student was denied in secondary school.[6] Accordingly, appropriate equitable relief should not include, at least in this circumstance, unconditional college tuition funding from a prior award of compensatory education.

Similarly, the Court finds no support for Plaintiffs' position that the Hearing Officer's Decision authorizes their claimed compensatory education request. As noted above, the Hearing

---

[6] In fact, Plaintiffs have not produced any evidence regarding the details of the Student's alleged-post secondary education expenses.

Officer awarded 990 hours of compensatory education and instructed that the form of the compensatory education services awarded: "shall be decided by the Parent[;] . . . may include any appropriate developmental, remedial, or enriching instruction that furthers the goals of the Student's current or future IEP[;] may be used after school, on weekends, or during the summer[;] and may be used after the Student reaches 21 years of age." (Doc. No. 39-3 ¶8.) Nowhere in the Hearing Officer's Order awarding a compensatory education for the School District's violation of the IDEA does the Hearing Officer place any obligation on the School District to pay upwards of $80,000.00 in college tuition and other post-secondary education expenses. Indeed, to accept Plaintiffs' interpretation of the Hearing Officer's Decision as assigning the compensatory education label to the Student's entire post-secondary career would be to ignore the qualifying language in the Order itself. Rather, the Hearing Officer explicitly defined the compensatory education award in terms of appropriate developmental, remedial, or enriching instruction that would further the Student's current or future IEP with respect to the areas of reading comprehension, written expression, behavior and social skills, and organization, where the School District failed to provide the Student with meaningful education benefit. (Doc. No. 39-3.) The provision of the Order permitting the Student to benefit from the award beyond the age of twenty-one does not, by its plain language, give rise to Plaintiffs' entitlement to tuition reimbursement for the Student's degree in Forestry Ecosystem Management, but rather, merely preserves the Student's right to benefit from such appropriate developmental, remedial, or enriching instruction as necessary to address the Student's identified educational deficits.

Guided by the unambiguous terms of the Hearing Officer's Order, the Court is unable to discern any record evidence presented by Plaintiffs in support of their motion for summary

judgment or in opposition to the School District's motion for summary judgment from which the Court could attribute the tuition and costs associated with the Student's post-secondary education in Forestry Ecosystem Management to the receipt of any specific developmental, remedial, or enriching education services reasonably calculated to provide the Student the educational benefits in the areas of reading comprehension, written expression, behavior management and social skills, and organization that would have accrued from special education services the School District should have supplied in the first place.  See Reid ex rel. Reid, 401 F.3d at 524.  In the absence of such evidence, the Court is compelled to conclude that Plaintiffs' request for tuition reimbursement for the Student's bachelor's degree in Forestry Ecosystem Management is not contemplated by the Hearing Officer's Order, as it does not further the purpose of compensatory education by placing the Student in the "same position [he] would have occupied but for the [S]chool [D]istrict's violations of [the] IDEA."  Id.  Accordingly, the Court will grant the School District's motion for summary judgment (Doc. No. 44), and deny the Plaintiffs' motion for summary judgment (Doc. No. 47), on Count I of the complaint, as there exists no record evidence to support Plaintiffs' entitlement to compensatory education in the form of post-secondary tuition reimbursement as a matter of law.

      B.      COUNT II: RETALIATION UNDER SECTION 504 OF THE REHABILITATION ACT

The School District has also moved for summary judgment on Count II of Plaintiffs' complaint, which sets forth a claim of retaliation under Section 504 of the Rehabilitation Act based on Plaintiffs' attempt in 2013 to secure a disbursement of the remaining compensatory education award to be used for the Student's college tuition.

Section 504 of the Rehabilitation Act provides a private cause of action against those who retaliate against qualified individuals for asserting rights secured by the IDEA. The anti-retaliation provision under the Rehabilitation Act states that "[no] recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing . . . ." 34 C.F.R. § 100.7(e).

In the absence of direct evidence of retaliation, a claim for retaliation under Section 504 of the Rehabilitation Act proceeds under the familiar three-step burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this paradigm, the Plaintiffs bear an initial burden of establishing a prima facie case of proscribed retaliation by showing: (1) engagement in a protected activity; (2) a retaliatory action on the part of the School District sufficient to deter a person of ordinary fitness from exercising his or her rights; and (3) a causal connection between the protected activity and the retaliatory action. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). If the plaintiff satisfies the threshold burden of establishing a prima facie case of retaliation, the burden then shifts to the defendant to specify a legitimate, non-retaliatory reason for the adverse action. If the defendant does so, the burden then shifts back to plaintiff, who is afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for retaliation.

Here, the School District contends, inter alia, that Plaintiffs have failed to proffer evidence from which a reasonable inference could be drawn that the School District took a

16

materially adverse course of action in response to Plaintiffs' demand for access to the compensatory education funds awarded by the Hearing Officer in 2013 while the Student was enrolled at Penn State University, as would be sufficient to deter an individual of ordinary fitness from exercising his or her statutorily-protected rights.

The Court agrees with the School District that Plaintiffs have failed to meet the second element of a prima facie case of retaliation. It is well settled that an "action must be both materially and objectively adverse in order to qualify as retaliation." Derrick F. v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 300 (M.D. Pa. 2008). Plaintiffs frame their retaliation claim as one premised on a theory that the Superintendent, on behalf of the School District, acted in a retaliatory manner by engaging Plaintiffs in protracted communications regarding their demand for the release of the compensatory education funds that ultimately culminated in the refusal to release compensatory education funds for the purposes advocated by the Plaintiffs. As this Court has found, however, the School District was justified in its ultimate refusal to comply with Plaintiffs' request for the disbursement of compensatory education funds, as the Hearing Officer's Decision did not grant Plaintiffs unencumbered access to unspecified compensatory education reserves to be used for the Student's college tuition and post-secondary expenses or for whatever other purpose Plaintiffs saw fit. Thus, no reasonable juror could conclude from the evidence of record that the School District acted in a materially and objectively retaliatory manner by refusing to make available to Plaintiffs that to which Plaintiffs were not entitled. See, e.g., Pueschel v. Peters, 340 F. App'x 858, 862 (4th Cir. 2009) ("We are not convinced that the adversity at issue here was material, given that we do not believe that [plaintiff] was entitled to the type of assistance or leave that she requested. Therefore, we find that [plaintiff] cannot

17

establish a prima facie case [of retaliation]."). To that end, no reasonable trier of fact could infer from the evidence of record that the School District's engagement in a process to ascertain whether the requested compensatory education funds comported with the Hearing Officer's directive that such funds would be used for education services designed to further the goals of the Student's current or future IEP—a process clearly envisaged by the Hearing Officer's Decision—amounted to a material and objective adverse course of action sufficient to deter an individual of ordinary fitness from vindicating his or her IDEA rights, as required to state a prima facie case of retaliation. Rather, the undisputed evidence supports the conclusion that the Superintendent attempted, in good faith, to engage Plaintiffs in an open dialogue regarding their request for compensatory education funds. See, e.g., Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 269 (3d Cir. 2007) (remarking that appellants' position that the school district engaged in retaliation by refusing to fund a private school placement without a waiver of rights "amounts to nothing more than an assertion that a party to a controversy that resists demands against it is engaging in retaliatory conduct by doing so," and noting that if it permitted a "trier of the facts to accept appellants' view of the so-called direct evidence [it] would allow it to conclude that when parties are in a dispute and are discussing its resolution, one side, in advancing its position is negotiating, and the other is retaliating"); Derrick F., 586 F. Supp. 2d at 303 (granting summary judgment on plaintiff's claim that the school district retaliated against him by failing to comply with a provision of the court-ordered IEP requiring plaintiff to receive direct instruction on the basis that no trier of fact "could determine that the [school d]istrict's method of instructing [plaintiff] f[ell] short of what is required by [plaintiff's IEP], let alone that it [was] adverse to him in any way").

Even assuming, arguendo, that Plaintiffs produced evidence from which a reasonable fact finder could conclude that the School District took a materially adverse course of action against the Plaintiffs sufficient to state a prima facie case of retaliation, Plaintiffs have failed to adduce sufficient evidence to rebut the School District's proffer of a legitimate and non-retaliatory justification for its decision on the issue of the Student's entitlement to compensatory education funds to pay for his college tuition. Indeed, as articulated by the School District, the record demonstrates that the legal and factual questions surrounding whether Plaintiffs' request for compensatory education funds for this purpose was permitted under the Hearing Officer's Decision fueled the communications between Plaintiffs and the Superintendent resulting in the denial of which Plaintiffs now complain. (Doc. No. 57 at 26.) Plaintiffs have not adduced evidence from which a reasonable fact finder could conclude that the proffered explanation for the denial of Plaintiffs' request is merely a pretext for retaliation. Accordingly, the Court will grant the School District's motion for summary judgment (Doc. No. 44), on Count II of Plaintiffs' complaint.

## IV. CONCLUSION

Based upon the foregoing, the Court will deny Plaintiffs' motion for summary judgment on Count I of the complaint (Doc. No. 47), and grant the School District's motion for summary judgment (Doc. No. 44), on Counts I and II of Plaintiffs' complaint. An appropriate Order follows.